ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
anthony@counselonegroup.com
JUSTIN KACHADOORIAN, Cal. Bar No. 260356
justin@counselonegroup.com
ALEXANDRIA R. KACHADOORIAN, Cal. Bar No. 240601
alexandria@counselonegroup.com
COUNSELONE, P.C.
9465 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212
Telephone: (310) 277-9945
Facsimile: (424) 277-3727

Attorneys for Plaintiff SERGIO PEREZ, on behalf of himself and others similarly situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERGIO PEREZ, on behalf of himself and others similarly situated,

Plaintiff,

v.

GO MACRO, LLC, and DOES 1 to 10, inclusive,

Defendants.

Case No. 5:25-cv-09890-PCP

[Assigned to the Honorable P. Casey Pitts]

**CLASS ACTION**

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

(1) Violation of California Business & Professions Code section 17200, *et seq.* (Unfair Competition Law)

(2) Violation of California Business & Professions Code section 17500, *et seq.* (False Advertising Law)

(3) Violation of California's Consumers Legal Remedies Act, California Civil Code section 1750, *et seq.*

(4) Unjust Enrichment

Plaintiff SERGIO PEREZ (hereinafter, "Plaintiff"), on behalf of himself and all others similarly situated, complains of Defendant GO MACRO, LLC ("Defendant") and DOES 1 through 10, as follows:

**NATURE OF ACTION**

1. This class action arises from Defendant's mislabeling and false advertising of its Gomacro Macrobar protein bars, including but not limited to Defendant's Protein Pleasure, Protein Replenishment, Protein Purity, Protein Decadence, Everlasting Joy, Heartwarming Retreat, Smooth Sanctuary, Cool Endeavor, Prolonged Power, Simple Splendor, Sweet Awakening, Blissful Daybreak, Pure Promise, Protein Paradise, and Timeless Treasure bars (hereinafter, "Misbranded Products").

2. As the country fights an obesity, diabetes, and heart disease epidemic, Americans are increasingly turning to protein as the macronutrient of choice because of its perceived ability to regulate blood sugar and increase satiety. In fact, the overconsumption of carbohydrate is believed to be a primary cause leading to these conditions.

3. Defendant postures the Misbranded Products to appeal to this sentiment by calling these products "protein bars" and advertising them as "high protein," thereby implying that protein is the predominant macronutrient in these bars. It is not. Contrary to these representations, the Misbranded Products do not primarily consist of protein but are in fact sugar bars, consisting primarily of carbohydrate. In fact, carbohydrate—and specifically sugar—is the predominant macronutrient in the Misbranded Products. The labeling of Defendant's protein bars was intended to deceive and did deceive consumers, who purchased the Misbranded Products in reliance of Defendant's labeling representations.

4. Through the foregoing false and deceptive marketing, advertising, and labeling scheme, Defendant violated, and continues to violate, Business & Professions Code § 17200, *et seq*. (UCL), and Business and Professions Code § 17500, *et seq*. (FAL), and the Consumers Legal Remedies Act (CLRA), Civil Code § 1750, *et seq*., and its conduct as alleged herein constitutes unjust enrichment.

5. Plaintiff, individually and on behalf of all others similarly situated, seeks equitable

remedies, namely, restitution and injunctive relief to remedy the harm suffered as a result of Defendant's unlawful labeling practices.

**PARTIES**

6. Throughout the relevant time period Defendant Go Macro, LLC has manufactured the Misbranded Products and sold them throughout California.

7. Plaintiff is unaware of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues those defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and, on that ground, alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged and that Plaintiff's injuries, as alleged, are proximately caused by those occurrences.

8. Plaintiff is informed and believes and on that ground alleges that, at all relevant times, each defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and on that ground alleges that each defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known about and authorized, ratified, adopted, approved, controlled, aided, and abetted the conduct of all defendants.

9. Venue is proper because a substantial part of the events or omission giving rise to the claim occurred in this judicial district.[1]

**FACTUAL BACKGROUND**

10. Defendant manufactures the Misbranded Products and sells them throughout California.

[1] Plaintiff has filed a Motion to Remand challenging the jurisdiction of this Court. *See* ECF No. 5. The Court has not yet ruled on Plaintiff's motion. In filing this amended complaint, Plaintiff does not waive, and instead expressly preserves, any and all challenges to this Court's jurisdiction.

11. Throughout the relevant time period, Defendant has explicitly called the Misbranded Products "protein bars."[2] The word "HIGH PROTEIN" or "PROTEIN" appears at the top of each label, set off from the surrounding material in a colored bubble. Below this is the product name "gomacro" in large letters and the word "MACROBAR." Immediately below the word Macrobar is the name of the bar, often highlighting protein as the macronutrient. Defendant uses the word "protein" in the name of the bars themselves, for example, "Protein Pleasure," "Protein Replenishment," and "Protein Purity." Below the name of the bar Defendant includes the protein-containing ingredients, such as peanut butter, almond butter, and cashew butter, again signifying the prevalence of protein in the bars.

12. Below is an example of the "High Protein" labels Defendant used during the relevant time period.




**Image 1: Front Label of Protein Pleasure gomacro Macrobar**

13. Defendant has used the foregoing "high protein" labels on products throughout the relevant time period. Below is a photo posted on Defendant's social media page on or around July 2, 2025:

---

[2] *See* gomacro.com/shop/protein-bars/




**Image 2: Instagram Ad of GoMacro Protein Bar on July 2, 2025**

14. Photos of Defendant's protein bars with "high protein" labels appeared on Defendant's website during the relevant time period.

15. Defendant also promoted its protein bars as "high protein snacks." The following copy was used and continues to be used by Defendant in advertisements of its protein bars: "HIGH PROTEIN SNACKS ON A MISSION: Mother-daughter owned, sustainably driven, and based in a rural community, our mission is to spread awareness for a balanced, plant-based lifestyle with vegan bars that have positive effects on the world."

16. Defendant advertises the Misbranded Products as "protein bars" on the internet and explicitly calls them "high-protein snacks." Defendant pays for sponsored ads on Google promoting its products as "high-protein snacks."




**Image 3: GoMacro's Google Paid Advertisement in or around July 2025**

17. The Misbranded Products continue to be advertised using "high protein" labels at third-party vendors such as Target and Amazon, both on the product labels on bars sold in the stores and in online advertising on the Target and Amazon websites. For example, as of December 4, 2025, the bars are still represented as "protein bars" on Amazon, specifically the Smooth Sanctuary, Protein Pleasure, Timeless Treasure, Pure Promise, Prolonged Power, Everlasting Joy, Celestial Delight, Blissful Daybreak, and Protein Replenishment bars, as are Defendant's multi-flavor variety packs. As of December 4, 2025, one of the bars still bears the name "protein pleasure," while another still bears the name "protein replenishment." Defendant also sells a "PROTEIN BAR VARIETY PACK." Moreover, the bars are sold on a page of the Amazon site under the subcategories "Health & Household > Diet & Sports Nutrition > Nutrition Bars & Drinks > Nutrition Bars > Protein Bars."

18. Similarly, as of December 4, 2025, the Target website sells GoMacro bars as "protein bars," including the Protein Pleasure, Balanced Goodness, Protein Replenishment, Blissful Daybreak, Timeless Treasure, and Coconut + Almond Butter + Chocolate Chip mini bars. Defendant's Protein Pleasure bar is still sold on the Target website as of December 4, 2025, with the words "HIGH PROTEIN" prominently displayed in the upper right hand corner of the front of the label. Further, the bars are sold on a page of the Target website under the subcategories "Health > Nutrition > Protein > Protein Bars." Similarly, in physical stores, Go Macro bars are sold in the protein bar and protein supplements aisles, and not in the aisles for candy bars, desserts, and other treats.

19. Protein is a multi-billion-dollar-per-year industry, and it is rapidly growing. Protein is a macronutrient of choice among consumers, and companies like GoMacro use "protein" and

"high protein" to attract customers who are looking for what they perceive to be a healthier choice. Defendant uses these terms to drive sales and charge customers more than they might otherwise pay for the Misbranded Products.

20. The protein component of food products tends to be the more expensive that other elements like carbohydrate and fat, and hence consumers are willing to pay more for products that are higher in protein or that they perceive to be higher in protein. Accordingly, consumers are willing to pay a premium for protein bars and bars that are high protein compared with other bars or snack food products, and consumers of the Misbranded Products paid a price premium based on Defendant's claims that they are protein bars and high protein.

21. GoMacro has been in business since 2004 and originally called the Misbranded Products "macrobiotic desserts," "MacroTreats," and "energy bars," but changed the name to "protein bars" to tap into this lucrative market for protein-based products.

22. Defendant engaged in a long-term, calculated marketing strategy to promote its "dessert bars" as "protein bars" to attract consumers who might otherwise be turned off to dessert or treat bars. Defendant has continued using its "high protein" labels and advertising its products as "high protein" even after the company removed the "high protein" claim from its labels and even after receiving notice of Plaintiff's claims herein. Defendant made the "protein bar" and "high protein" representations and invoked protein in the product name throughout the putative class period continuing to the present. Plaintiff viewed advertisements throughout this period beginning no later than the start of the class period in early 2021.

23. Consumers like Plaintiff rely on protein representations made on the product label and in advertisements. "Amid the health and wellness movement, protein bars are flying off grocery shelves… The protein bar market has become massive… Many consumers assume that, because they're labeled with the word protein which is such a key part of a healthy diet – protein bars are good for you." [3]

24. A reasonable consumer purchasing the Misbranded Products would think that he or she is purchasing a product that is high in protein and/or protein-based, i.e., consisting

[3] *See* https://foodinstitute.com/focus/protein-bars-proliferate-yet-they-confuse-consumers/ (last accessed December 5, 2025).

predominantly of protein with, at best, moderate amounts of fat and carbohydrate.

25. In fact, the Misbranded Products are not and have never been high in protein, nor have they ever been protein-based.

26. The term "high protein" is a nutrient content claim regulated by the FDA. In order to make that claim, a product has to contain at least than 20 percent of the Daily Reference Value (DRV) of protein based on the FDA's protein digestibility-corrected amino acid score (PDCAAS). *See* 21 C.F.R. § 101.9(c)(7) and § 101.54(b).

27. The Misbranded Products have never contained 20 percent of more of the DRV of protein based on the PDCAAS, as required by the FDA. The Misbranded Products are primarily composed of sugar. For example, Defendant's Protein Pleasure protein bar contains 39 grams of carbohydrate and 14 grams of sugar, 12 of which are added sugars. In contrast, it contains only 11 grams of protein, only half of which—or roughly 5.5 grams—meets the FDA's protein digestibility-corrected amino acid score (see 21 C.F.R. § 101.9(c)(7)); in other words, the protein used in these protein bars has low digestibility, and the percentage of protein is far below the required 20 percent of the DRV of protein.

28. To put this in perspective, Defendant's Protein Pleasure bar contains 156 calories from carbohydrate, 99 calories from fat, and only 22 calories from digestible protein. Hence, there is far more carbohydrate than there is protein in these "protein bars." Indeed, Defendant's Protein Pleasure bar contains more added sugar alone than it does protein. The Misbranded Products actually contain more carbohydrate than many candy bars. They are really just sugar bars—or what Defendant previously called "dessert bars"—masquerading as protein bars to trick customers into buying them. As such, the Misbranded Products are neither high in protein nor protein-based.

29. In this way, Defendant also violates 21 C.F.R. section 101.3 of the regulations implementing the Food, Drug, and Cosmetics Act. This provision requires that the front label of a product bear the statement of identity of the product. As alleged, Defendant misbrands its product a "protein bar" when it is really a just a snack bar, sugar bar, dessert bar, or simply a candy bar.

30. Defendant also violates 21 C.F.R. section 101.18(b), which states, "The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons)

of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling."

31. Defendant's labeling is misleading under 21 C.F.R. section 101.18(b) because Defendant labels its bars using the word "protein" in the names of its bars and specifically calling out the protein-containing ingredients when protein is not the most prevalent macronutrient in the bars and the identified ingredients (such as almond butter) are less predominant than the ingredient (e.g., brown rice syrup) that sweetens the bars in the form of added sugar.

32. Defendant also violated 21 C.F.R. section 102.5(b), which states, "The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case."

33. 21 C.F.R. § 102.5(b) requires Defendant to state the percentage of protein as the characterizing component on the front label next to the product name and identify sugar as the characterizing component given its prominence in the product, which Defendant does not do. Had Defendant complied with applicable regulations, consumers would have immediately seen the percentage of protein relative to the entire product declared on the front label—and also recognized that added sugar is a characterizing ingredient in the Misbranded Products, which deliver nearly 25 percent of the DRV for added sugar in a single bar. The percent daily value of added sugar exceeds that of protein. The amount of added sugar is so high that one of Defendant's protein bars contains nearly half of the daily health-based limits for added sugars recommended by the American Heart Association (AHA) for women and youth and one-third for men.[4]

34. Finally, Defendant misbrands its products by calling them protein bars when they are really just dessert bars or cookies that are minimally, but inappropriately, fortified with protein. The FDA forbids the fortification of such junk food. 21 C.F.R. § 104.20(a).[5] In fact, the FDA warns

[4] *See* www.heart.org

[5] *See also* "Questions and Answers on FDA's Fortification Policy Guidance for Industry," FDA,

that such fortification could result in deceptive or misleading claims for certain foods, *ibid.*, which is precisely what happened with the Misbranded Products.

35. Plaintiff is an assistant wrestling coach. He is concerned about health and proper nutrition and in particular about weight management. He seeks high protein or protein-based foods to support his active and athletic lifestyle, assist him with his fitness and weight-loss objectives, and curb cravings for less nutrient-dense foods.

36. Like most consumers, Plaintiff eats protein bars because they are fast and achieve his objective of following a high or higher protein diet. Plaintiff purchases and consumes the bars often on the go when he does not have time to prepare a regular meal.

37. Plaintiff purchased the Misbranded Products in California over the last four years. Beginning no later than 2021 and continuing through 2025 Plaintiff purchased Defendant's protein bars and specifically its bars labeled "high protein" or that referenced protein in the product name such as Protein Pleasure, Protein Replenishment, Protein Purity, Protein Decadence, Blissful Daybreak, Everlasting Joy, Prolonged Power, Pure Promise, Heartwarming Retreat, and Protein Paradise, in or around Monterey County, California, as well as when shopping out of town. He purchased the foregoing bars in Monterey, where he lives, at stores such as Safeway, Whole Foods, Sprouts, Trader Joes, CVS, and Rite-Aid. He also purchased these bars at Target stores in Salinas, California and Seaside, California. He also purchased the identified Go Macro bars at gas station convenience stores. Plaintiff began purchasing these Go Macro bars no later than the beginning of 2021 and continued to do so through 2025.

38. Plaintiff saw representations on the product labels of the bars he purchased stating that the bars were "high protein," and he also read the names of the bars containing the word "protein" in them, as alleged hereinabove. These bars were also stocked in the protein-bar section

---

Nov. 2015, available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-questions-and-answers-fdas-fortification-policy ("In the fortification policy, snack foods refer to foods that are not naturally nutrient dense; examples include cookies, candies, cakes, chips, and carbonated beverages (both sweetened and unsweetened). Fortification of these types of snack foods could mislead consumers to believe that substitution of naturally nutrient dense foods with fortified snack foods would ensure a nutritionally adequate diet. [¶] Moreover, the fortification of such snack foods would disrupt public understanding about the nutritional value of individual foods and thereby promote confusion among consumers, making it more difficult for them to construct diets that are nutritionally adequate.")

of the stores he visited, not the dessert or cookie section. Relying on Defendant's product labels, Plaintiff purchased the Misbranded Products believing that the bars were "high protein," that the bars were protein-based, and/or that protein was the predominant macronutrient as opposed to fat or carbohydrate, especially sugar.

39. The Misbranded Products have a higher price than other comparable products, and Plaintiff chose to pay the premium based on Defendant's misrepresentations, as alleged above. Based on these representations, Plaintiff purchased the Misbranded Products and paid a price premium for them compared with other bars or snack food products.

40. Plaintiff might be willing to purchase the Misbranded Products again in the future provided that they are truthfully advertised, allowing him to decide where they fit into his overall diet and health plan, as with other desserts and treats.

41. Defendant made these misrepresentations regarding the protein content on the front labels of multiple flavors of its bars, on the boxes in which bars were sold to consumers, in advertising on its website, Instagram account, in Google ads, and in its online sales pages on Amazon and Target, as detailed above, and it made these representations continually from at least before the start of the class period in or around April 2021 through to December 2025.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class:

> All persons who purchased one or more of the Misbranded Products in California and made his or her purchase at any time within the longest applicable limitations period.

43. Members of the class, as described above, will be referred to as "class members." Excluded from the class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors, (2) the judge to whom this case is assigned and the judge's staff and members of their immediate families, and (3) Plaintiff's counsel, its staff, and members of their immediate families. Plaintiff reserves the right to amend the above class and to add subclasses as appropriate based on

investigation, discovery, and the specific theories of liability.

44. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the class is easily ascertainable.

**A. Numerosity**

45. Although the precise number of class members has not been determined at this time, Plaintiff is informed and believes that the class members are so numerous that joinder is impracticable and that the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**B. Common Questions Predominate**

46. There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members. Thus, proof of a common set of facts will establish the right of each class member to recovery. These common questions of law and fact include but are not limited to:

a. Whether Defendant violated section 1770(a)(5) of the CLRA by representing that the Misbranded Products have characteristics, ingredients, uses, benefits, or quantities that they do not have;

b. Whether Defendant violated section 1770(a)(7) of the CLRA by representing that the Misbranded Products are of a particular standard, quality, or grade, or that goods are of a particular style or model when they are of another;

c. Whether Defendant violated section 1770(a)(9) of the CLRA by advertising the Misbranded Products with intent not to sell them as advertised;

d. Whether Defendant violated the UCL by falsely representing the predominance of protein in the Misbranded Products and/or that the Misbranded Products are "high protein";

e. Whether Defendant violated the FAL by falsely advertising the Misbranded Products to overstate the predominance of protein in the Misbranded Products and/or that the Misbranded Products are "high protein"; and

f. Whether Defendant's conduct in falsely representing the predominance of protein in the Misbranded Products and/or contending that the Misbranded Products are "high protein" constitutes unjust enrichment.

**C. Typicality**

47. Plaintiff's claims are typical of the claims of the putative class members because Plaintiff purchased the Misbranded Products throughout the class period based on Defendant's labeling representations, as alleged above. In this way, Plaintiff and each class member sustained similar injuries arising out of Defendant's conduct in violation of law. The injuries of each class member were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all putative class members and represents a common thread of misconduct resulting in injury to all class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

**D. Adequacy**

48. Plaintiff will fairly and adequately represent and protect the interests of the class. Counsel who represents Plaintiff and putative class members are experienced and competent in litigating class actions.

**E. Superiority of Class Action**

49. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members. An important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

///

///

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**

**BUS. & PROF. CODE § 17200, *et seq.* (THE "UCL")**

50. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

51. California's Unfair Competition Law ("UCL"), California Business & Professions Code sections 17200 *et seq*., protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.

52. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal Bus. & Prof. Code § 17200.

53. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

54. Defendant violates the unfair prong of the UCL by falsely representing the Misbranded Products as alleged above in Paragraphs 10 through 41.

55. These acts and practices are unfair because they are likely to cause consumers to falsely believe that the Misbranded Products are high protein and contain a greater amount of protein than they actually do. This perception has induced customers, including Plaintiff, to pay a price premium for the Misbranded Products. The decision to buy the Misbranded Products at a premium based on these misrepresentations has significant impact on consumers' diets, health, and lifestyle preferences, as it may cause consumers to overconsume carbohydrate or consume too little protein. It is inherently unfair to deprive individuals of their freedom of choice about what to put into their bodies by misrepresenting a product in the manner described herein.

56. The gravity of the harm to members of the putative class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, and/or motives of Defendant

in such deceptive acts and practices. Through its unfair acts and practices, Defendant improperly obtained, and continues to obtain, money from Plaintiff and the putative class while failing to provide the promised product. Plaintiff requests that Defendant restore this money to Plaintiff and all class members in the amount of the price premium paid for the Misbranded Products and cease violating the UCL, as detailed in the Prayer. Without such relief, Plaintiff and the putative class will be irreparably harmed.

57. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

58. Defendant's conduct is "fraudulent" within the meaning of the UCL because it has deceived Plaintiff and the general public into believing that they are purchasing a food that is high protein and consisted predominantly of protein when in fact it is mostly carbohydrate and sugar, as alleged above in Paragraphs 10 through 41.

59. In deciding to purchase the Misbranded Products at a premium price, Plaintiff relied on Defendant's misleading and deceptive representations on the front label.

60. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law. A business act or practice is "unlawful" under the UCL if it violates any other law.

61. Defendant violates the unlawful prong of the UCL by violating 21 C.F.R. §§ 101.3 (requiring the principal display panel to bear as one of its principal features a statement of identity of the commodity), 101.18(b) (stating that a product's labeling may be misleading when the name given to the food inappropriately includes or suggests the name of one or more of the ingredients), 21 C.F.R. § 104.20 (prohibiting fortification of certain foods), 21 C.F.R. section 102.5(b) (requiring common or usual name of food to include percentage of characterizing ingredients), 21 C.F.R. section 101.9(c)(7)(regarding the PDCAAS for protein), 21 C.F.R. section 101.54(b) (regarding nutrient content claims), CLRA, Cal. Civ. Code § 1770(a)(5), (7), and (9) and the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*, as alleged hereinbelow.

62. As a result of the foregoing conduct, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and the putative class. Defendant has been unjustly

enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct in the amount of the premium paid for the Misbranded Products, as alleged above.

63. Through its unfair, fraudulent, and unlawful acts and practices, Defendant has improperly obtained money from Plaintiff and the putative class. Pursuant to California Business & Professions Code § 17203, Plaintiff seeks equitable relief, including money unlawfully obtained from Plaintiff and the putative class and injunctive relief, including public injunctive relief, as described in the Prayer below, prohibiting Defendant from continuing to engage in the unfair and unlawful conduct described above.

**<u>SECOND CAUSE OF ACTION</u>**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,**

**BUS. & PROF. CODE § 17500, *et seq.* (THE "FAL")**

64. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

65. The California False Advertising Law prohibits unfair, deceptive, untrue, or misleading advertising including, but not limited to false statements as to the quality or contents of products sold to consumers.

66. As alleged above in Paragraphs 10 through 41, Defendant's labels are false and misleading because they claim that the Misbranded Products were "high protein" and that they are protein bars, thus implying that they are protein-based and/or that protein is the most prevalent macronutrient when it is not.

67. Defendant's practice is unfair, deceptive, and misleading to consumers, who think they are getting a different product from what they actually receive.

68. Through its unfair, deceptive, and misleading acts and practices, Defendant has improperly obtained money from Plaintiff and the putative class in the amount of the premium that they paid for the Misbranded Products, as alleged above. Plaintiff respectfully requests that the Court restore these funds to Plaintiff and the putative class and enjoin Defendant's continuing violations of the FAL to prevent further irreparable harm to consumers. Plaintiff also requests an

injunction, including a public injunction, as described in the Prayer below, preventing Defendant from falsely advertising the Misbranded Products in the manner described above.

**<u>THIRD CAUSE OF ACTION</u>**

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT,**

**CAL. CIVIL CODE SECTION 1750, *et seq.* (THE "CLRA")**

69. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

70. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq*. (the "CLRA").

71. Plaintiff and each member of the putative class are "consumers" within the meaning of Civil Code section 1761(d).

72. Defendant's sale of the Misbranded Products constitutes "transactions" within the meaning of Civil Code section 1761(e).

73. The Misbranded Products purchased by Plaintiff and the putative class are "goods" within the meaning of Civil Code section 1761(a).

74. Defendant has engaged in unfair methods of competition and unfair and/or deceptive acts or practices against Plaintiff and the putative class in violation of the CLRA by falsely representing the Misbranded Products as alleged above.

75. Defendant's misrepresentations violate Civil Code sections 1770(a)(5) ("[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"), 1770(a)(7) (prohibiting "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"), and 1770(a)(9) (prohibiting "[a]dvertising goods or services with intent not to sell them as advertised").

///

///

76. As a result of these acts and practices, Plaintiff and the putative class were injured in that Defendant's unlawful and misleading acts and practices caused Plaintiff and putative class members to pay a premium for the Misbranded Products, as alleged above.

77. Pursuant to California Civil Code section 1780(a)(2), Plaintiff, on behalf of himself and the putative class, requests that this Court issue an injunction, including a public injunction, as described in the Prayer, prohibiting Defendant from engaging in the unlawful and deceptive methods, acts, and practices alleged above.

78. Pursuant to Civil Code section 1780(a)(3), Plaintiff, on behalf of himself and the putative class, requests that this Court award restitution in the amount of the price premium Plaintiff and other putative class members paid for the Misbranded Products.

79. Pursuant to Civil Code section 1782, on April 30, 2025, Plaintiff sent Defendant a letter, by certified mail, in which he outlined the foregoing violations of the CLRA and requested that Defendant remedy these violations as to himself and the class. Defendant has not agreed to correct, repair, replace, or otherwise rectify the violations alleged herein within thirty (30) calendar days after Defendant's receipt of Plaintiff's letter.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

80. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

81. An individual is required to make restitution if he or she is unjustly enriched at the expense of another.

82. A person is enriched if the person receives a benefit at another's expense.

83. The person receiving the benefit is required to make restitution where the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.

84. Defendant's conduct in enticing Plaintiff and putative class members to purchase the Misbranded Products through its false and misleading advertising and packaging as described throughout this Complaint is unlawful because the statements contained on Defendant's product labels are untrue, deceptive, or misleading.

85. Defendant took monies from Plaintiff and members of the putative class based on false representations about the ingredients in its protein bars.

86. Defendant has been unjustly enriched at the expense of Plaintiff and the putative class as result of Defendant's unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and putative class members.

87. Defendant received a benefit, i.e., revenue and profits from the sale of the Misbranded Products in the form of the price premium paid therefor, at the expense of Plaintiff and the class because Defendant obtained a premium price for such products using false, deceptive, or misleading representations, as alleged hereinabove.

88. It is unjust for Defendant to retain the money it received from Plaintiff and putative class members because Defendant gained that money by deceiving Plaintiff and the class into believing they would receive a different product from the one they actually received.

89. Plaintiff and the class are therefore entitled to restitution of the price premium they paid to Defendant for their purchases by which Defendant has been unjustly retained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the putative class, prays as follows:

A. For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representative, and that Plaintiff's counsel be appointed counsel for the class;

B. For restitution in the amount of the premium that Plaintiff and putative class members paid for the Misbranded Products as a result of the misrepresentations, as alleged above;

C. For an injunction and/or public injunction prohibiting Defendant, in all future advertisements and after Defendant's currently paid-for advertising campaigns are complete and after the complete exhaustion of its existing labeling inventory, from advertising the Misbranded Products as being "protein bars" or "high protein" or referencing protein in the product name or description without the required disclosures, as alleged above;

D. For a declaration that Defendant's practices violate the UCL, FAL, and CLRA; and

constitute unjust enrichment;

E. For an order awarding reasonable attorneys' fees and the costs of suit herein, including an award of attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5 and Civil Code section 1780(e);

F. For such other and further relief as may be deemed necessary or appropriate.

DATED: December 8, 2025

COUNSELONE, PC

By ______________________________

Anthony J. Orshansky
Alexandria R. Kachadoorian
Justin Kachadoorian

*Attorneys for Plaintiff Sergio Perez and the Putative Class*